**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| KEVIN A. TOLLIVER, | : | Case No. 2:22-cv-4566 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Elizabeth P. Deavers |
| ANNETTE CHAMBERS-SMITH | : | |
| (DIRECTOR), *et al.*, | : | |
| | : | |
| Defendants. | : | |

## SECOND REPORT AND RECOMMENDATION

This civil rights matter is before the Court to screen Plaintiff's Amended Complaint. (Doc. 9-1).  Plaintiff, a state prisoner proceeding without the assistance of counsel, submitted his original Complaint in November 2022.  (Doc. 4, PageID 111).  The undersigned United States Magistrate Judge recommended that the Court dismiss it.  (First Report and Recommendation, Doc. 5).  Plaintiff filed objections (Doc. 8) and later, a motion for leave to file an amended complaint (Doc. 9).  The motion was granted.  (Doc. 10).

As in the original Complaint, Plaintiff alleges that his civil rights were violated with respect to a November 2019 parole hearing.  (Doc. 9-1).  Upon consideration of the Amended Complaint, the Undersigned **RECOMMENDS** that the Court **PERMIT** one narrow procedural due process claim **PROCEED** to further development at this time against some defendants, but that the remaining claims and defendants be **DISMISSED**.

## I.    Initial Screening Standard

The Undersigned reviews the Amended Complaint under the same standard set forth in the First Report and Recommendation, which is incorporated herein by reference.  (Doc. 5,

PageID 149-151). That is, pursuant to 28 U.S.C. §§ 1915A(b) and 1915(e)(2), the Undersigned examines whether the Amended Complaint, or any portion of it, is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This is not an all-or-nothing proposition; if only a part of the Amended Complaint is frivolous or fails to state a claim, only that part must be dismissed. *Id*. Likewise, if only a part of the Amended Complaint states a plausible claim, only that part may proceed.

## II.    Parties and Claims

Plaintiff Kevin A. Tolliver is a state prisoner, currently serving a criminal sentence of eighteen years-to-life for murder. (Amended Complaint,[1] ¶¶ 1, 20, 42). He was convicted and sentenced in 2002. *See Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010) (affirming the denial of his petition for habeas corpus relief).[2]

On November 27, 2019, Plaintiff participated in his first parole hearing. (AC, ¶ 22; *see also* Ohio Parole Board Decision and Minutes, Doc. 1-2, PageID 65). The Ohio Parole Board did not grant him parole at that time. (*Id*.). His next parole hearing is scheduled for ten years later, in November 2029. (*Id*.).

---

[1] For better readability, the Undersigned will cite to Plaintiff's Amended Complaint in this case, currently of record as Docket Entry 9-1, simply as the "AC." Paragraph numbers are cited at times for greater precision.

[2] The United States Court of Appeals for the Sixth Circuit summarized the facts of the case against Tolliver as follows:

> Shortly after 1:00 AM on December 29, 2001, Claire Schneider was shot in the mouth and bled to death on the floor of her apartment in Columbus, Ohio, where she lived with her boyfriend, Kevin Tolliver. Although Tolliver was present in the apartment, he did not call 911, but instead repeatedly called his ex-wife, as well as his voicemail, Schneider's voicemail, and a friend. Police eventually responded to a 911 call from Tolliver's ex-wife, and found Tolliver in the apartment with Schneider, almost entirely covered in blood—except for his hands, which he had washed. Following a three-week trial, a jury convicted Tolliver of murder.

*Tolliver v. Sheets*, 594 F.3d at 905.

Plaintiff sues eleven defendants in the Amended Complaint, all affiliated with the Ohio Department of Rehabilitation and Correction (ODRC):

1.  Annette Chambers-Smith (Director)

2.  ODRC

3.  Alicia Handwick (Chairperson)

4.  Ohio Adult Parole Authority

5.  Ohio Parole Board

6-11.  John and Jane Doe Board Members

(AC, PageID 195 and ¶¶ 5-7). He sues under 42 U.S.C. § 1983, alleging violations of his civil rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[3] (AC, ¶¶ 1-3). Plaintiff alleges that he was denied "meaningful consideration for parole" and that his rights were violated by practices and policies that violate the law. (AC, ¶ 12).

Specifically, he alleges that statements from victims or their families are often submitted to the Parole Board but not provided to inmates, and may contain false or misleading information. (*See e.g.*, AC, ¶¶ 13-14 (discussing a "Victim's Veto")). He also alleges that the Board has secret policies to deny parole to first time candidates and/or candidates who maintain their innocence, and/or are a person of color, and/or where the victim is white. (*See, e.g.*, AC, ¶¶ 19, 33 (discussing "first time flop rules")). Plaintiff further alleges that he was denied his right to meaningful participation of counsel under the Sixth and Fourteenth Amendments and his right to remain silent during interrogation under the Fifth Amendment. (*See, e.g.*, AC, ¶¶ 18 , 53). He seeks declaratory and injunctive relief. (AC, ¶ 1 and PageID 215-216).

---

[3] Plaintiff also asserts that the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. (AC, ¶ 3; *see also* Objections, Doc. 8, PageID 174-175, 179-180).

Plaintiff appears to have submitted the original Complaint in November 2022. (*See* Complaint, Doc. 1-1, PageID 34-35). After the Undersigned recommended that it be dismissed in its entirety (First Report and Recommendation, Doc. 5), Plaintiff filed objections (Doc. 8) and a motion for leave to file an amended complaint (Doc. 9). The motion was granted. (Doc. 10). This screening of the Amended Complaint (Doc. 9-1) follows.

### III.  Discussion

The Undersigned concludes that Plaintiff's claim that he was denied parole on a false record—a procedural due process claim under the Fourteenth Amendment—should proceed at this time as against the eight individual defendants. The remaining claims and defendants should be dismissed.

### A.  The ODRC, OAPA, and OPB are not proper defendants in a § 1983 case, and are also immune from suit.

As the Undersigned previously observed:

"Section 1983 creates liability for 'persons' who deprive others of federal rights under color of law. Only a 'person' faces liability under the statute." *Hohenberg v. Shelby Cnty., Tenn.*, 68 F.4th 336 (6th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)).

"The Ohio Parole Board is a section within the Adult Parole Authority, a state agency." *Latham v. Ohio Parole Board*, No. 1:15-cv-488, 2015 WL 5905833, at *3 (S.D. Ohio Sept. 16, 2015), *report and recommendation adopted,* 2015 WL 5882979 (S.D. Ohio Oct. 7, 2015). **The Board is not a "person" for purposes of Section 1983**. *See Lair v. Ohio Parole Bd.*, No. 2:20-cv-347, 2020 WL 2468740, at *2 (S.D. Ohio May 13, 2020), *report and recommendation adopted*, 2020 WL 5250510 (S.D. Ohio Sept. 3, 2020) ("neither the Ohio Parole Board nor the [county court] are 'persons' who can be held liable under § 1983") (citation omitted); *Latham*, 2015 WL 5905833, at *3 ("The complaint should also be dismissed as to the Ohio Parole Board because it is not subject to suit under § 1983.").

**Neither is the ODRC**. *See Vizcarrondo v. Ohio Dep't of Rehab. & Corr.*, No. 1:18-cv-1255, 2019 WL 6251775, at *5 (N.D. Ohio Nov. 22, 2019) (noting "multiple courts have found that ODRC is not a 'person' subject to suit under 42 U.S.C. § 1983."); *Peeples v. Ohio Dep't of Rehab. & Corr.*, 64 F.3d 663 (6th Cir. 1995) (affirming the district court's dismissal of suit against the ODRC that held that "the ODRC is not a 'person'") (unreported table case); *Latham,* 2015 WL

4

> 5905833, at *2 ("Plaintiff's complaint also fails to state a claim for relief under §
> 1983 against defendant ODRC, as this defendant is not a person under § 1983.").

(First Report and Recommendation, Doc. 5, PageID 143 (emphasis added here)).  Similarly, new

Defendant Ohio Adult Parole Authority (OAPA) is also a state agency and has been held not to

be a "person" subject to suit under § 1983 either.  *See Harris v. Ohio Adult Parole Auth.*, No.

2:21-cv-1401, 2021 WL 1949270, at *3 (S.D. Ohio May 14, 2021*), report and recommendation*

*adopted*, 2021 WL 3169156 (S.D. Ohio July 26, 2021) (recommending dismissal of the OAPA, a

state agency).

In addition to not being proper "persons" subject to suit under § 1983, state agencies are

"absolutely immune from suit in this Court by virtue of the Eleventh Amendment to the United

States Constitution."  *Harris*, 2021 WL 1949270, at *3 (citing *Regents of Univ. of Calif. v. Doe*,

519 U.S. 425, 429 (1997).  "Sovereign immunity protects states . . . from suit in federal court."

*Boler v. Earley*, 865 F.3d 391, 409-10 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 358

(6th Cir. 2005)).  This immunity "also applies to state agencies or departments."  *Boler*, 865 F.3d

at 410 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  While there

are some narrow exceptions to sovereign immunity in this context, they do not apply here.  *See*

*Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) ("The State of Ohio has immunity

for all claims against it because Ohio has not consented to suits in federal court nor has Congress

abrogated Ohio's immunity under § 1983."); *Stone v. Ohio Parole Bd.*, No. 2:21-cv-884, 2021

WL 5071827, at *2 (S.D. Ohio Nov. 2, 2021) ("Absent an express waiver, the Eleventh

Amendment to the United States Constitution bars suit against a State or one of its agencies or

departments in federal court regardless of the nature of the relief sought.") (citation omitted).

Accordingly, the ODRC, OAPA, and OPB should be dismissed from this case.  *See Jones*

*v. Swank*, No. 2:11-cv-797, 2012 WL 4107981, at *8 (S.D. Ohio Sept. 19, 2012) ("The ODRC is

an arm of the State of Ohio and is immune from suit in a federal court under the Eleventh Amendment."); *Topping v. Ohio Adult Parole Auth.*, No. 2:11-cv-00727, 2012 WL 4920172, at *2 (S.D. Ohio Oct. 16, 2012) ("Defendant Ohio Adult Parole Authority is not an entity that can be sued. It is an arm of the state. The State is immune under the Eleventh Amendment from suits against it. This Court cannot 'strip' a state agency of its Eleventh Amendment immunity.") (internal citations omitted); *Stone v. Ohio Parole Bd.*, No. 2:21-cv-884, 2021 WL 5071827, at *2 (S.D. Ohio Nov. 2, 2021) (concluding that the magistrate judge's "recommended dismissal of Plaintiff's claims against the OPB [on the basis of sovereign immunity] pursuant to § 1915(e) was appropriate.").

The Undersigned makes two additional notes with respect to these organizational defendants.  In his Objections, Plaintiff suggests that the ODRC, OAPA, and OPB may properly be sued under 28 U.S.C. §§ 1331 and 1343.  (Doc. 8, PageID 174-175; *see also* AC, ¶ 3).  These two statutes describe types of *jurisdiction* that district courts have over certain causes of action.[4]

---

[4] 28 U.S.C. § 1331 describes "Federal question" jurisdiction:  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

28 U.S.C. § 1343 describes district courts' jurisdiction over certain cases alleging violations of "Civil Rights and elective franchise" (voting):

    (a)  The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

        (1)  To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

        (2)  To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

        (3)  To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

        (4)  To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C § 1343(a).

6

The statute 42 U.S.C. § 1983, on the other hand, describes a specific *cause of action*, a "Civil action for deprivation of rights."[5] *See generally Protect My Check v. Dilger*, No. 3:15-cv-42, 2016 WL 10489864, at *3 (E.D. Ky. Feb. 18, 2016) (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005)) ("The 'provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983).'"  This was the cause of action presented in Plaintiff's original Complaint.  (*See* Complaint, entitled "Original Action in Declaratory Judgment Pursuant to 42 USC 1983," Doc. 4, and ¶ 2).  The Amended Complaint is entitled "Original Action in Declaratory Judgment Pursuant to 42 USC § 1983; 28 USC § 1331; and § 1343."  (AC, Doc. 9-1, *see also* ¶ 2).  The Undersigned clarifies that although this Court appears to have jurisdiction over the type of action that Plaintiff has brought (under 28 U.S.C. §§ 1331 and 1343(a)), the cause of action he has brought (a § 1983 claim) cannot succeed against the ODRC, OAPA, or OPB for the reasons discussed above.

Finally, the Undersigned also notes that Plaintiff's reference to correcting the "real party in interest" under Fed. R. Civ. P. 17 has no application to defendants.  (*See* AC, PageID 218; *see also* Objections, Doc. 8, PageID 178).  *See Eaves v. Strayhorn*, No. 1:09-cv-394, 2010 WL 2521449, at *5 (S.D. Ohio June 15, 2010) ("the legal concept of a 'real party in interest' by definition is inapplicable to defendants.").

---

[5] This statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

**B.** **Plaintiff's § 1983 claims arising in November 2019 may be barred by the statute of limitations and not saved by Ohio's savings statute, but this issue will be resolved later.**

All of Plaintiff's claims in the Amended Complaint are based on his November 27, 2019 parole hearing. (*See* AC, ¶ 12). Applying the "prison mailbox rule,"[6] Plaintiff's original Complaint was considered filed on November 24, 2022, almost three years after the hearing. (*See* Complaint, Doc. 4, PageID 110; First Report and Recommendation, Doc. 5, PageID 155). The Undersigned therefore recommended that all of Plaintiff's claims based on his parole hearing be dismissed as barred by the two-year statute of limitations for § 1983 claims. (First Report and Recommendation, Doc. 5, PageID 154-155).

In his Amended Complaint (and his Objections), Plaintiff does not take issue with the length of the identified statute of limitations, which is borrowed from Ohio law. *See Webster v. Spears*, 664 F. App'x 535, 537 (6th Cir. 2016) ("In the absence of a federal statute of limitations period for an action under § 1983, we look to the applicable state law where the injury allegedly occurred to determine the statute of limitations for personal injury"). It is well-settled in this circuit "that the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code Ann. § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual." *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (citing *Owens v. Okure*, 488 U.S. 235 (1989)).

Plaintiff also does not contest that the statute began to run on November 27, 2019, when he was denied parole. (*See* First Report and Recommendation, Doc. 5, PageID 154). It appears

---

[6] Under the prison mailbox rule, "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). "Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Id*. Here, Plaintiff reportedly signed the Complaint on November 24, 2022. (Complaint, Doc. 1-1, PageID 34).

8

that the denial occurred the same day as the hearing; Plaintiff says that "the Board took only ten

(10) minutes of deliberation to deny parole. . ."  (AC, ¶ 58).  Instead, Plaintiff appears to assert

that his claims are timely by virtue of having been re-filed within one year after he voluntarily

dismissed them, without prejudice, in state court.  (AC, ¶¶ 10-11 (citing Ohio R. Civ. P. 41); *see

also* Objections, Doc. 8, PageID 173, 175-176).

This argument may be a reference to Ohio's so-called "savings statute" found in Ohio

Revised Code § 2305.19.  It provides in relevant part:

> In any action that is commenced or attempted to be commenced, . . . if the plaintiff
> fails otherwise than upon the merits, the plaintiff . . . may commence a new action
> within one year after the date of . . . the plaintiff's failure otherwise than upon the
> merits or within the period of the original applicable statute of limitations,
> whichever occurs later.

Ohio Revised Code § 2305.19(A).  In other words, the Ohio savings statute "provides that when

an action is dismissed other than on the merits, the plaintiff may refile the action within one

year." *Moore v. Mount Carmel Health Sys*., 162 Ohio St. 3d 106, 2020-Ohio-4113, 164 N.E.3d

376, ¶ 1.  The Ohio savings statute can apply in federal court; the Sixth Circuit has said that

"[w]hen we use a state's Statute of Limitations, we also use its procedural rules affecting that

Statute of Limitations." *Coleman v. Dep't of Rehab. & Corr*., 46 F. App'x 765, 769 (6th Cir.

2002) (citing *West v. Conrail*, 481 U.S. 35, 39-40 n.6 (1987)).

"A voluntary dismissal without prejudice under Ohio R. Civ. P. 41 is a failure otherwise

than on the merits." *Kerr v. Hurd*, 694 F. Supp. 2d 817, 836 (S.D. Ohio 2010) (citing *Frysinger

v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987)).  However, the Ohio savings statute does not

apply to every voluntary dismissal in state court.  It only applies, for example, where the first

action was itself timely. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) ("The

Savings Statute applies where 'an action is timely commenced . . .'") (internal citations omitted).

It also only applies where the first action was dismissed *after* the statute of limitations for that

action expired.  *Id.* (the savings statute applies to a timely action that is dismissed "after the applicable statute of limitations has run");  *Rosendale v. Ohio Dep't of Transp.*, 10th Dist. Franklin No. 08AP-378, 2008-Ohio-4899, ¶ 11 (Sept. 25, 2008) (quoting *Reese v. Ohio State Univ. Hosp.*, 6 Ohio St.3d 162, 163, 451 N.E.2d 1196 (1983)) ("R.C. 2305.19 is inapplicable 'unless . . . the applicable statute of limitations had expired by the time of . . . dismissal.'");  *Turner v. J.S. Carpenter*, No. 1:09-cv-1000, 2010 WL 11664816, at *2 (N.D. Ohio Jan. 5, 2010) (citing *Harris v. Canton*, 725 F.2d 371, 375 (6th Cir. 1984)) ("The Ohio Savings Statute is inapplicable when the statute of limitations expires after a plaintiff's claim has been dismissed.").  And, the savings statute only applies "when 'the original suit and the new action are substantially the same.'"  *Eaves v. Strayhorn*, No. 1:09-cv-394, 2010 WL 2521449, at *5 (S.D. Ohio June 15, 2010) (citing *Children's Hosp. v. Ohio Dep't of Pub. Welfare*, 69 Ohio St. 2d 523, 525, 433 N.E.2d 187 (1982)).  "Notably, the actions are not substantially the same when the parties in the two actions are different."  *Id.*

Here, Plaintiff says that he "originally filed this case in the State Court as Franklin County Common Pleas Case no. 22-cv-0908."  (AC, ¶ 10; *see also* "Judicial Notice of: Franklin County Court of Common Pleas Case Number," Doc. 2).  The docket of that case, captioned *Kevin A. Tolliver v. Ohio Parole Board, et al.,* is available online by name or case number search at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/ (accessed Oct. 3, 2023) (hereinafter the "Franklin County Case").  Plaintiff says that the Franklin County Case was filed on November 22, 2021 by certified mail.  (AC, ¶ 10).  However, the docket of that case reflects that the case was actually opened on February 10, 2022.  In an April 13, 2023 Entry in that case (available online), the Franklin County Court directly said:  "Plaintiff filed the instant action on February 10, 2022 and dismissed it on September 12, 2022."  This Court may take judicial notice

of these court records that are available online to members of the public.  *See Lynch v. Leis*, 382

F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

Plaintiff has attempted to formally change the filing date of the Franklin County Case

from February 10, 2022 to November 22, 2021 by way of a mandamus action in Ohio's Tenth

District Court of Appeals.  His attempt was very recently rejected, for procedural reasons.  *See*

*State ex rel. Kevin A. Tolliver, Relator, v. Clerk of Franklin Cnty. Cts., Respondent.*, 10th Dist.

Franklin No. 22AP-90, 2023-Ohio-3435, ¶ 13 (Sept. 26, 2023) (dismissing the case; attaching a

Magistrate's Decision noting that Plaintiff sought "a declaratory judgment ordering that the filing

date for the *Tolliver* complaint be deemed November 22, 2021.").  The documents in that case

suggest that Plaintiff's complaint was delivered to the Clerk of the Franklin County Court on

November 22, 2021, but was rejected by the Clerk and mailed back to Plaintiff, who did not

actually receive it, perhaps because of issues with inmate legal mail.  *Id*. at ¶¶ 11-19.

In any event, the Franklin County Court has said that the case was filed on February 10,

2022.  *See* April 13, 2023 Entry in Case No. 22-cv-0908.  This date, too, is more than two years

after Plaintiff's November 27, 2019 parole hearing.  If Ohio's two-year statute of limitations for

personal injury claims applies, *see* Ohio Revised Code § 2305.10, Plaintiff's first case was

untimely.  If the first case was untimely, the savings statute does not apply.  *Harris v. United*

*States*, 422 F.3d at 331.

If, however, Ohio's four-year statute of limitations for other injuries applies to Plaintiff's

first case, *see* Ohio Revised Code § 2305.09(D), then the case appears to have been timely filed.

But for the Ohio savings statute to apply, that four-year statute of limitations must have expired

*before* the case was dismissed.  *See Turner*, 2010 WL 11664816, at *2.  Beginning with the

November 27, 2019 date of Plaintiff's parole hearing, the four-year statute would expire on

11

November 27, 2023.  This date is *after* Plaintiff dismissed his first case on September 12, 2022, making the savings statute inapplicable.  *See id.* ("The Ohio Savings Statute is inapplicable when the statute of limitations expires after a plaintiff's claim has been dismissed").  In sum, it appears that the Ohio savings statute would not apply under either scenario.[7]

If the Court were to accept the filing date asserted by Plaintiff of November 22, 2021 (and to accept for purposes of this screen only that the Franklin County Case was timely filed), the savings statute might apply to some Defendants.  *Cf. Eaves,* 2010 WL 2521449, at *7 (holding that where defendants in a refiled case "are indisputably different from the parties named in the original complaint" the claims against them "are barred by the applicable statute of limitations, and the savings statute does not save them.").

Plaintiff's first case named two defendants:  the Ohio Parole Board and the Ohio Department of Rehabilitation and Corrections.  *See* Feb. 10, 2022 Complaint in Franklin County Case No. 22-cv-0908, available at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/ (accessed Oct. 3, 2023).  If the savings statute did apply, it is not clear whether it would apply to any Defendants other than the OPB and ODRC under the reasoning in *Eaves,* 2010 WL 2521449 at *5.  This determination is further complicated by the fact that Plaintiff has now named John and Jane Doe Defendants in his Amended Complaint.  *See generally Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir. 1996) (discussing the statute of limitations and John Doe defendants).

_____

[7] That Ohio has a four-year statute of limitations for some types of claims raises the reasonable question of why the Court does not "borrow" that four-year statute instead of the two-year statute set forth in Ohio Revised Code § 2305.10.  The answer is because the United States Supreme Court and the Sixth Circuit have said to use the two-year statute.  *See Owens v. Okure,* 488 U.S. 235, 249-50 (1989) (holding, in what "essentially a practical inquiry," "that where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."); *Browning v. Pendleton,* 869 F.2d 989, 991 (6th Cir. 1989) (citing *Owens*) ("The [Supreme] Court unanimously held that when a state, like Ohio, has multiple statutes of limitation for personal injury actions, the appropriate state statute of limitations to borrow for claims brought under 42 U.S.C. § 1983 is the residual or general personal injury statute of limitations, not any statute of limitations for specific intentional torts" and applying the two-year statute in Ohio Revised Code § 2305.10).

The Undersigned declines to resolve these more nuanced legal and factual questions in the first instance without input from the parties.  Accordingly, the Undersigned **WITHDRAWS** the previous recommendation concluding that all Plaintiff's claims are barred by the statute of limitations and should be dismissed, and leaves the issue for later consideration, if necessary. (*See* First Report and Recommendation, Doc. 5, PageID 155, 168).

### C.   Plaintiff's Amended Complaint fails to state a claim or is frivolous, with one exception.

In the First Report and Recommendation, the Undersigned looked beyond the issues discussed above and explained that, even if the issues did not bar the claims, "most of the Complaint would still be subject to dismissal as frivolous and/or for failure to state a claim." (Doc. 5, PageID 156).  Most of this analysis, which is incorporated here by reference, applies equally to the Amended Complaint as discussed next.  (*See* Doc. 5, PageID 156-166).

**First**, Plaintiff cannot raise claims on behalf of other inmates.  (*See* Doc. 5, PageID 156). Plaintiff asserts in his Objections that this is not his intent (*see* Doc. 8, PageID 176) and appears to attempt to clarify in his Amended Complaint.

**Second**, the type of claim concerning a parole hearing that may be raised in a § 1983 action is limited.  (*See* Doc. 5, PageID 157-159).  Plaintiff's overarching assertion in the Amended Complaint is that he was denied meaningful consideration for parole (*see, e.g.*, AC, ¶¶ 12, 17-18, 22, 24, 28-31, etc.), which the Undersigned reads to be a substantive due process claim.  But no substantive due process claim exists in this circumstance, because Plaintiff does not have a liberty interest in parole as a matter of law.  *See Bell v. Anderson*, 301 F. App'x 459, 462 (6th Cir. 2008); *Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.*, 492 F. App'x

567, 569-70 (6th Cir. 2012).[8]  The requirement for *procedural* "[d]ue process in parole

proceedings is satisfied as long as the procedure used affords the inmate an opportunity to be

heard, and, if parole is denied, the parole board informs the inmate of the basis upon which it

denied parole."  *Dodson v. Mohr*, No. 21-3778, 2022 WL 3954932, at *3 (6th Cir. July 28, 2022)

(quoting *Swihart v. Wilkinson*, 209 F. App'x 456, 459 (6th Cir. 2006) (citing *Greenholtz v.

Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979))).

"Here, Plaintiff was afforded the ability to he heard—he acknowledges that he submitted

information and participated in the parole hearing—and was provided the basis for the denial."

(First Report and Recommendation, Doc. 5, PageID 157 (citing Plaintiff's "Parole & Release

---

[8] The *Jergens* court said:

> The Supreme Court mandates a two-step analysis for procedural due-process claims: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, ––– U.S. ––––, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). As to the first step, it is now axiomatic that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). States in fact have no duty even to establish a system for parole. *Id.* When such a system is in place, however, the existence of a liberty interest in release is entirely dependent on state law. *See id.* at 12, 99 S.Ct. 2100. Thus, if state statutes vest complete discretion to the parole board to determine parole eligibility, no liberty interest exists. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 464-65, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). If, on the other hand, state law wrests from the board selected aspects of its discretion—for example by unequivocally requiring release upon the prisoner's demonstration of certain conditions, *see Greenholtz*, 442 U.S. at 11, 13, 99 S.Ct. 2100, or in the absence of others, *see Board of Pardons v. Allen*, 482 U.S. 369, 377-78, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987)—a liberty interest protectable under the Due Process Clause is recognized.

> In accordance with these principles, we begin with the question whether Ohio law recognizes the existence of a liberty interest in parole. That answer is governed directly by our recent opinion in *Michael v. Ghee*, 498 F.3d 372, 378 (6th Cir.2007), *cert. denied*, 553 U.S. 1005, 128 S.Ct. 2067, 170 L.Ed.2d 795 (2008), which held under the same statutory and regulatory structure relevant to the present case that "the state of Ohio has not created a liberty interest in parole eligibility, as it has a completely discretionary parole system." (internal quotation marks omitted); *see also Jago v. Van Curen*, 454 U.S. 14, 20, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981) (concluding under an earlier similar regulatory structure that "[p]arole for Ohio prisoners lies wholly within the discretion of the OAPA," and thus that "[t]he statutes which provide for parole do not create a protected liberty interest for due process purposes" (internal quotation marks omitted)). **Thus, it is well established that Ohio law does not create a protected liberty interest in release from parole.**

*Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.*, 492 F. App'x 567, 569-70 (6th Cir. 2012) (emphasis added).

Package," Doc. 1-2, PageID 36-64; Ohio Parole Board Decision and Minutes, Doc. 1-2, PageID 65-66)).  "Due process, judged by this standard, is satisfied."  (*Id*. at PageID 157).  Although Plaintiff now alleged that he was not given the opportunity to be heard "through counsel" (AC, ¶¶ 31, 52, 82, 120; *see also* Objections, PageID 176), he has not cited authority for the proposition that the law requires counsel be afforded during a parole eligibility hearing, as discussed more below.  (*See also* First Report and Recommendation, Doc. 5, PageID 161-162).

The Undersigned previously acknowledged that a narrow procedural due process claim may exist based on one allegation in the Complaint, specifically, Plaintiff's allegation "that the Board relied on, or may have relied on, secret victim-related statements that may have been incorrect."  (*Id*., PageID 159-161).  Plaintiff appears to have intended to repeat this allegation in his Amended Complaint.  (*See* AC, ¶¶ 23, 28).  But the details of the allegation likely appear on two missing pages within the Amended Complaint, pages 13 and 14.  (*See* AC, PageID 206-207 (jumping from page 12 to page 15 and from ¶ 61 to ¶ 76)).  The Undersigned liberally construes Plaintiff's Amended Complaint to raise the same issue as the Complaint in this respect and again notes that "one particular allegation may, for the purposes of this initial screening, approach plausibility."  (*See* First Report & Recommendation, Doc. 5, PageID 160).  That allegation is:

> [D]isconnected from the reality of his education, upbringing, and life as a DAS Certified Construction Manager who specialized in Commercial Architectural Identification Projects, and his modest real-estate investments; the Board apparently believed he was instead a home bathroom remodeler and a small time drug dealer. Neither of which has ever been true. The narrative they adopted in the hearing was the same as one available from an unofficial source on the internet. This website was meant to slander Plaintiff and block his parole.

(Complaint, ¶ 58; *see also* AC, ¶ 61 (where part of this allegation appears)).  "Plaintiff also alleged in his request for reconsideration of the parole decision (Doc. 1-2. PageID 67-70) that erroneous information was used.  (Doc. 1-2, PageID 68-69).  This claim appears to be the only due process claim that could arguably have proceeded, had it been properly brought within time

and against proper defendants." (First Report and Recommendation, Doc. 5, PageID 161). The Undersigned again concludes that this allegation, as construed, remains the only potentially viable procedural due process claim that could proceed past screening under § 1983. The remaining allegations (due process and otherwise) in the Amended Complaint are frivolous and/or fail to state a claim on which relief may be granted. In short, nothing in the Amended Complaint changes the Undersigned's earlier conclusion that Plaintiff's allegations about the denial of his right to counsel, right to remain silent,[9] the prohibition against cruel and unusual punishment, and "first time flop rules" fail to state a claim or are frivolous. (First Report and Recommendation, Doc. 5, PageID 161-166).

The Undersigned makes a few additional notes about the Amended Complaint, which is different than the original Complaint in a few ways.

---

[9] The Sixth Circuit recently explained that a parole hearing did not normally *compel* self-incrimination, saying:

> [Plaintiff] claimed that the defendants violated his Fifth Amendment rights by punishing him for refusing to incriminate himself. "The Self-Incrimination Clause 'does not prohibit all self-incrimination but only compelled self-incrimination.'" *In re Flint Water Cases*, 53 F.4th 176, 215 (6th Cir. 2022) (Thapar, J., concurring in part) (quoting Akhil Reed Amar & Renee B. Lettow, Fifth Amendment First Principles: The Self-Incrimination Clause, 93 Mich. L. Rev. 857, 865 (1995)). So long as the refusal to admit guilt does not render a prisoner automatically ineligible for parole, the pressure to admit guilt to improve the chance of obtaining parole is not sufficiently compulsory to implicate the Fifth Amendment. *See McKune v. Lile*, 536 U.S. 24, 44 (2002) (Kennedy, J.) (plurality opinion) ("States may award good-time credits and early parole for inmates who accept responsibility because silence in these circumstances does not automatically mean the parole board, which considers other factors as well, will deny them parole."); *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288 (1998) ("[T]his pressure to speak in the hope of improving his chance of being granted clemency does not make the interview compelled."); *Hawkins v. Morse*, No. 98-2062, 1999 WL 1023780, at *2 (6th Cir. Nov. 4, 1999) ("[I]t cannot be said that the alleged pressure to admit that he committed the crime for which he is incarcerated in order to improve his chances for parole forces [one] to incriminate himself in violation of the Fifth Amendment.").

> [Plaintiff] did not allege that his refusal to accept responsibility for the crimes of conviction automatically rendered him ineligible for parole. [He] instead alleged that the defendants denied him parole based not only on his refusal to accept responsibility but also on the nature of the crimes and community opposition to his release. The district court properly dismissed [his] Fifth Amendment claim because he was not compelled to incriminate himself.

*Wampler v. Handwerk*, No. 23-3010, 2023 WL 4353402, at *2-3 (6th Cir. June 23, 2023).

Plaintiff's focus with respect to his right-to-counsel claim appears to have shifted from an allegation that he was *not informed* that he *was allowed* to have counsel represent him (*see, e.g.*, Complaint, ¶ 22) to an allegation that he was *not allowed* to have counsel under an ODRC policy, which violates the constitution.  (AC, ¶ 25; *see also* Objections, Doc. 8, PageID 177 ("he was told that he could not have counsel at this parole board hearing (even if privately retained).")).

As before, Plaintiff concludes that he has a right to counsel by analogizing his parole eligibility hearing to a sentencing hearing (*see* AC, ¶¶ 82, 84-85, 114, 119) at which the Parole Board "extend[ed]" his sentence for another ten (10) years," (AC, ¶ 58) or "increase[d] his time in prison" (AC, ¶ 29).  The analogy is inapt.[10]  Despite Plaintiff's repeated assertions to the contrary, a parole eligibility hearing is not part of the criminal proceedings against Plaintiff during which he is entitled to the full panoply of protections afforded to accused criminal defendants.  *See Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) ("since parole-related decisions are not part of the criminal prosecution, 'the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated . . . '")) (internal citations omitted).  Plaintiff states no constitutional claim based on the alleged denial of counsel at his parole eligibility hearing.  (*See* First Report and Recommendation, Doc. 5, PageID 161-162).

In his Amended Complaint, Plaintiff also adds allegations concerning the Board's alleged use of race in denying him parole.  He "clarifies that that as part of their determination for

---

[10] The characterization is also inaccurate.  Plaintiff was given an aggregate 18-years-to-life sentence by the state trial court.  (AC, ¶ 42 ("The Trial judge sentenced Mr. Tolliver to 15 years to life for murder with an additional three years for the firearm specification."); Objections, Doc. 8, PageID 173 ("Plaintiff Kevin A. Tolliver has been wrongfully convicted and is entering the 23rd year of an 18-years to life sentence.")).  *See also Tolliver v. Sheets*, 594 F.3d 900, 914 (6th Cir. 2010) ("The jury found Tolliver guilty on June 4, 2002, and the judge sentenced Tolliver to serve 15 years to life, with an additional three years added on through a firearm specification.") (emphasis added).  That is his sentence.  He has no right to release before the expiration of that sentence.  *Greenholtz*, 442 U.S. at 7.  Thus, the Parole Board did not *extend* the court's sentence, but was considering whether to *shorten* it.

17

denying parole and in imposing a maximum ten-year continuance the board: a.) used Plaintiff's race as a factor and b.) used [the] victim's race as a factor." (AC, ¶ 19; *see also* ¶¶ 27, 94, 97, 101, 121). These allegations are raised as part of, or as a corollary to, Plaintiff's argument that the Board has a secret and unwritten policy not to grant parole to first time candidate, which he terms "first time flop rules." (*See, e.g.*, AC, ¶ 33 ("Plaintiff seeks a declaration from this Court that Defendants' secret policy and practice of first time flops, for those who maintain innocence, and/or are people of color during the parole process is unlawful . . .")). The allegations suggest a claim under the Equal Protection Clause of the Fourteenth Amendment.

"To state an equal protection claim under § 1983, a plaintiff 'must allege that a state actor intentionally discriminated against [him] because of his membership in a protected class.'" *Hall v. Smith*, No. 2:21-cv-1135, 2022 WL 969557, at *4 (S.D. Ohio Mar. 31, 2022) (citations omitted). "Alternatively, he must show 'that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id*. (quoting *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 939-40 (M.D. Tenn. 2012)).

Plaintiff does not provide any facts to support his conclusion that he was treated differently based on his race and/or the deceased's race. In fact, a letter from Plaintiff filed with the original Complaint suggests the opposite. In a May 24, 2020 Letter to Annette Chambers-Smith, Plaintiff noted that nearly all the inmates before the Board on November 27, 2019 received (at least) the same ten-year continuance: "of the nine (9) people that received decisions on that day eighty three (83) years was dispersed. Only an old man on his fourth hearing got less than a an additional ten (10) years." (Doc. 1-2, PageID 71).

In any event, in the Amended Complaint, Plaintiff's only explanation for his conclusion that race was a factor is based on his observation that the Board did not make specific recommendations about his rehabilitative needs in their decision:

> 97. If Plaintiff had received meaningful consideration, the Board would have used ORAS, as is directed by O.A.C. § 5120-13-01, to make some recommendation of "the offender's rehabilitative needs" within its "Parole Board Decision Minutes." However, they identified no such needs and made no recommendations. <u>This is evidence confirming other factors including race were used in denial of parole</u>.
>
> 98. Instead they used their unlawful policies and practices to ignore any genuine consideration and to continue his sentence for the ten (10) year maximum of their authority where after another hearing will occur. Because Defendants' policies and practices denied meaningful consideration for release the Board never made any such determinations of a need for more programming, education, or pro social adjustments. <u>Issuing the maximum extension was based on race</u>.

(AC, ¶¶ 97-98 (emphasis added)).  This speculative analytical leap is without factual support in the Amended Complaint and is insufficient to state a plausible claim on which relief may be granted.

Read all together, at base, Plaintiff's allegation appears to be that he should have been granted parole under the circumstances, and the Board's decision not to grant parole therefore must have been based on improper factors such as erroneous statements by the victim's family, and/or unwritten rules mandating the denial of parole to him as a first-time candidate who maintains his innocence, and/or discrimination based on race.  He says, for example,

> 51. Plaintiff Tolliver presented a Parole Package and Re-Entry Plan that included exceptional programming and educational achievement, outstanding institutional conduct, superior community support and multiple job offers (See: Exhibit 1). He was even relocating to another city to ensure a truly fresh start within his new life. Thus, the Board had every reason to grant parole.
>
> [and]
>
> 95. Plaintiff Tolliver is a perfect example of the type of candidate who should be released upon his first parole hearing. He has surpassed every category of the O.A.C. § 5120-1-1-07 factors for suitability determination by an extreme measure. However, this was his first hearing; he maintains his innocence, is black, and

19

alleged victim is white. Plaintiff never received meaning consideration due to these unconstitutional factors.")).

(AC, ¶¶ 51, 95; *see also* ¶¶ 49-50, 59).

Plaintiff's speculation that unconstitutional factors must have been used is not enough to state a constitutional claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"). The Amended Complaint does not provide any specific factual allegations from which this Court could infer that the Board in fact used race to deny him parole. The Board itself gave different reasons for its decision, which Plaintiff has provided in the record. The Board said:

> Inmate Tolliver's case is aggravated by the case-specific factors of violence, brutality, and victimization. Inmate Tolliver has completed some relevant programs to address his risk factors for re-offending, and has maintained an acceptable institution adjustment since 2012; however, the serious nature of the crime and the aggravating factors in the offense do outweigh the efforts presented by inmate Tolliver. The aggravating factors in this case lead the Board to conclude that release would demean the seriousness of the offense and not further the interest of justice. After weighing relevant factors, the Board does not consider the Inmate suitable for release at this time and assesses a ten year continuance.

(Doc. 2-1, PageID 65). The Board also indicated that:

> There is substantial reason to believe that the inmate will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under AR 5120:1-1-12.

> [and]

> There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate would not further the interest of justice or be consistent with the welfare and security of society.

(*Id.*).

The Court's role in this § 1983 case is not to reweigh the Parole Board's given explanation against the factors that Plaintiff emphasizes in his Amended Complaint and determine if he should be paroled. *See generally Jackson v. Hudson*, No. 2:18-cv-1319, 2019

20

WL 3521745, at *3-4 (S.D. Ohio Aug. 2, 2019) ("whether Defendants' parole decision was informed by a full picture of Plaintiff's rehabilitation is not a question that falls within the province of procedural due process.").  To the extent that Plaintiff would ask the Court to do so and to correct the alleged issue by ordering him to be paroled, such a claim would be barred by *Heck v. Humphrey*.[11]

To the extent Plaintiff simply seeks to present an equal protection claim by clarifying that race was a factor in the denial of his parole, the Undersigned finds that he has failed to state a claim on which relief may be granted.  *See Hall v. Smith*, No. 2:21-cv-1135, 2022 WL 969557, at

---

[11] This Court recently found a due process parole claim to be barred by *Heck v. Humphrey*, saying:

> As for any claims not barred by the statute of limitations, as articulated by the Magistrate Judge, they are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).
>
> > In *Heck*, the Supreme Court held that 'in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,' a plaintiff proceeding under § 1983 must 'prove that the conviction or sentence that has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus'.
>
> *Whipple v. Tenn. Bd. of Paroles*, No. 18-5390, 2019 WL 1804845, at *3 (6th Cir. Jan. 3, 2019) (quoting *Heck*, 512 U.S. 468-87). As the Sixth Circuit has held, "*Heck* bars an action 'that calls into question the fact or duration of parole.' " *Id*. at *3 (alteration omitted) (quoting *Noel v. Grzesiak,* 96 F. App'x 353, 354 (6th Cir. 2004) (internal quotations omitted)).
>
> Because Plaintiff's allegation by its very nature asserts that the parole board's decision is invalid, however, it is barred by *Heck*. *See id.* (citing *Noel*, 96 F. App'x 353 at 354). Rather than address this case law in his objections, Plaintiff urges this Court that he has been retaliated against. . . . This, though, does not meet the rule in *Heck*. Since he does not allege or provide that his "sentence was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," his claim fails and is DISMISSED.

*Hall v. Smith*, No. 2:21-cv-1135, 2022 WL 969557, at *4 (S.D. Ohio Mar. 31, 2022) (emphasis added).  "This is true even though Plaintiff seeks declaratory and injunctive relief."  *Pettus-Brown v. Adult Parole Auth*., No. 2:18-cv-82, 2019 WL 1455208, at *2 (S.D. Ohio Apr. 2, 2019), *report and recommendation adopted*, 2019 WL 2058627 (S.D. Ohio May 9, 2019) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred . . . *no matter the relief sought* (damages or equitable relief), . . . if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis added) and *Ramzan v. Hares*, No. 2:18-cv-219, 2019 WL 580797, at *3 (W.D. Mich. Feb. 13, 2019) (collecting cases) ("The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief.")).

*5 (S.D. Ohio Mar. 31, 2022) ("Because Plaintiff has not offered any allegations that corroborate his assertions of discrimination or other factual content to support his advanced conclusions, his claim fails. Accordingly, Plaintiff's equal protection claims arising from parole denials occurring within the last two years are DISMISSED.").

Finally, with respect to Plaintiff's allegation that the Board uses false or possibly false statements from victims' families without allowing inmates to review or rebut the statements, the Undersigned notes that the Supreme Court of Ohio has rejected a version of this claim.  In *State ex rel. Brust v. Chambers-Smith*, another Ohio prisoner argued "that a parole-eligible inmate has a minimal due-process right to review his or her parole record for error and introduce testimony or other evidence relating to any factual inaccuracies prior to a parole hearing."  156 Ohio St. 3d 331, 2019-Ohio-857, 126 N.E.3d 1099, ¶ 20.  (*Compare* Plaintiff's AC, ¶ 111 ("In order to effectively exercise the recognized right to meaningful consideration for parole, and in order to vindicate the 'minimal due process expectation' recognized by the Supreme Court of Ohio, a prisoner is entitled to review the reports, documents and other written information considered by the Board at a parole hearing.")).  The Supreme Court of Ohio disagreed.  *Id.* at ¶ 21.  Another facet of this issue appears to be pending before Ohio's Tenth District Court of Appeals in *Brust v. Ohio Parole Board,* 10th Dist. Franklin No. 22AP-581, which the Undersigned mentions because Plaintiff said he patterned his original complaint (in Franklin County) on the *Brust* complaint.[12]  *See Wernert v. Ohio Parole Bd.*, 10th Dist. Franklin No. 22AP-580, 2023-Ohio-

---

[12] In the Franklin County Case, Plaintiff sought to join *Brust and Grasa v. Ohio Parole Board and Ohio Department of Rehabilitation and Corrections*, Franklin County Case No. 21-cv-3015.  He said, in a filing concerning joinder, that "the facts and issues of the cases are the same, or so similar," and that "Much of the text of Plaintiff's Complaint is taken verbatim from that of Brust/Grasa."  *See* April 8, 2022 "Plaintiff's Reply to Defendant's Opposition to Joinder," in Franklin County Case No. 09-cv-0908.  Available at https://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/ (accessed Oct. 3, 2023).  (*See also* Judicial Notice, Doc. 2 herein, PageID 78 ("Plaintiff filed in State court with the intention of being joined with a case that has since been settled (i.e.: *Brust and Grasa v. Ohio Parole Board* Case No. 21-cv-3015")).  The Franklin County Common Pleas

1984, ¶¶ 3-4, 7 (June 15, 2023) (providing some context for the claims).[13]

Other courts have also rejected these types of claims. *See, e.g., Palmer v. Granholm*, No. 1:06-cv-301, 2006 WL 1876973, at *3 (W.D. Mich. July 5, 2006) ("Plaintiff argues that the parole board's unwritten policy of deferring its decision-making to the crime victim and the parole board's consideration of false 'confidential' victim statements under the Crime Victim's Rights Act violate his procedural due process rights. Plaintiff fails to raise a claim of constitutional magnitude."); *Hall v. Adult Parole Auth.*, No. 3:13-cv-548, 2013 WL 5232785, at

---

Court dismissed the *Brust/Grasa* case, Case No. 21-cv-3015, on August 24, 2022, after significant analysis. As of the date of this writing, the case is on appeal in Ohio's Tenth District Court of Appeals. See *Shawn K. Brust et al. v. Ohio Parole Board et al.,* 10th Dist. Franklin No. 22AP-581, also available on the Franklin County Common Pleas Court website cited in this footnote.

[13] The Tenth District said:

{¶ 3} On May 13, 2021, Brust and Grasa, both of whom are inmates in the custody and control of the Ohio Department of Rehabilitation and Correction ("ODRC"), filed a complaint against appellees alleging they had been denied meaningful consideration of parole due to appellees' implementation of a "blanket policy" prohibiting prospective parolees from accessing victim impact statements submitted to appellees. (Aug. 24, 2022 Decision & Entry at ¶ 6, citing Brust compl. at ¶ 25). Brust and Grasa alleged that the victim impact statements contained false information and they sought both a declaration that appellees' policy violated Ohio law and an injunction prohibiting appellant from employing the policy in processing future parole applications. The trial court found that the claims in the Brust complaint were predicated alternatively upon statutory law and the rule of law articulated by the Supreme Court of Ohio in *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270, ¶ 24.

{¶ 4} On June 16, 2021, appellees moved the trial court to dismiss the Brust complaint, pursuant to Civ.R. 12(B)(6), for failure to state a claim for relief. Appellees argued that R.C. 5120.21(D)(5) required appellees to keep victim impact statements confidential and none of the recognized exceptions applied. Appellees also disputed Brust's and Grasa's claim that the rule of law in *Keith* and its progeny permit an inmate to access victim impact statements submitted to appellees in the parole process. . . .

{¶ 7} On August 24, 2022, the trial court issued a decision and entry granting appellees' motion to dismiss the Brust complaint for failure to state a claim upon which relief could be granted. The trial court determined that the allegations in the Brust complaint, if accepted as true, did not give rise to a justiciable controversy. In addressing Brust's common law claims, the trial court determined that *Keith* and its progeny do not vest Ohio inmates with a legally protected right of access to victim impact statements submitted to appellees in connection with parole.

*Wernert*, 2023-Ohio-1984, ¶¶ 3-4, 7 (emphasis added).

23

*3 (N.D. Ohio Sept. 16, 2013) ("to the extent Plaintiff is contending he has a constitutional right to review and edit the information in his parole file, his claim is without merit.").

With these supplementary notes, the Undersigned again concludes that all of Plaintiff's claims are frivolous or fail to state a claim on which relief may be granted and should be dismissed, except for his allegation that the Ohio Parole Board used false information to deny him parole.

## IV.   Third "Strike"

In light of the foregoing conclusions, the Undersigned **WITHDRAWS** the previous strike warning recommendation.  (*See* First Report and Recommendation, Doc. 5, PageID 166-168).

## V.   Proceeding Further Against the John and Doe Defendants

"Although designation of a 'John Doe' or 'unknown' defendant is not favored in the federal courts, it is permissible when the identity of the alleged defendant is not known at the time the complaint is filed and plaintiff could identify defendant through discovery."  *Robinson v. Doe*, No. 1:07-cv-729, 2009 WL 650383, at *2 (S.D. Ohio March 10, 2009) (collecting cases); *accord Woodard v. Farris*, No. 2:20-cv-00007, 2020 WL 1469886, at *3 (M.D. Tenn. Mar. 25, 2020) (determining that "it would be inappropriate to dismiss the claims against the John Doe Defendants at this juncture because of the likelihood that the identities of these Defendants will be determined during discovery").

Once Plaintiff discovers the name of the John and Jane Doe Defendants, he must seek leave to amend his Complaint to identify them.  *See generally* Fed. R. Civ. P. 15 (concerning amended and supplemental pleadings); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("new parties may not be added after the statute of limitations has run").  The Undersigned makes no determination at this time whether leave should be granted.

24

VI.     **Summary and Conclusion**

The Undersigned concludes, having screened Plaintiff's Amended Complaint (Doc. 9-1):

A.  The three organizational defendants (ODRC, OAPA, and OPB) should be dismissed from the case because they are not "persons" against whom a § 1983 claim can succeed and because they are immune from suit.  *See* Section III.A.

B.  Although all of Plaintiff's claims based on his November 27, 2019 parole hearing may be barred by the statute of limitations and not saved by Ohio's savings statute, the Undersigned will not resolve this issue at this time.  The previous recommendation that all Plaintiff's claims are time-barred is **WITHDRAWN**.  *See* Section III.B.

C.  All but one of the claims in the Amended Complaint are frivolous or fail to state a claim on which relief may be granted, and should be dismissed under 28 U.S.C. §§ 1915A(b) and 1915(e)(2).  *See* Section III.C.

D.  The previous strike warning recommendation is **WITHDRAWN**.  *See* Section IV.

The Undersigned therefore **RECOMMENDS** that the Court **DISMISS**:

1.  all claims against the ODRC, OAPA, and OPB; and

2.  all claims arising under the Fifth Amendment (remaining silent); the Sixth Amendment (counsel); the Eighth Amendment (cruel and unusual punishment); and the Fourteenth Amendment (equal protection and substantive due process, as well as procedural due process, with the exception of the narrow issue identified herein).

The Undersigned **RECOMMENDS** that the Court permit Plaintiff to **PROCEED** at this time on his claim that he was denied parole on the basis of false information.  If the District Judge agrees, what will remain for further proceedings will be a single claim under 42 U.S.C. § 1983, against

the eight individual defendants in their official capacities, for an alleged violation of procedural due process under the Fourteenth Amendment.

Service will be issued once the District Judge has considered this Second Report and Recommendation and any objections to it.  However, the Clerk of Court is **DIRECTED** to send a courtesy copy of this Second Report and Recommendation to the Ohio Attorney General's Office (which represents defendants employed by the State of Ohio in similar matters) at 30 E. Broad Street, 23rd Floor, Columbus, OH 43215.  The Clerk is also **DIRECTED** to file the Amended Complaint (Doc. 9-1) separately on the docket.

Plaintiff is **ADVISED** that he must keep this Court informed of his current address, and promptly file a Notice of New Address if he is released or transferred.

## VII.    Notice Regarding Objections to this Report and Recommendation

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it **within fourteen days** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver

of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


October 11, 2023                                          /s/ *Elizabeth A. Preston Deavers*
                                                          ELIZABETH A. PRESTON DEAVERS
                                                          UNITED STATES MAGISTRATE JUDGE