IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN A. TOLLIVER,

        **Plaintiff,**

                                    Case No. 2:22-cv-4566

        vs.                           Judge Algenon L. Marbley

                                    Magistrate Judge Elizabeth P. Deavers

OHIO PAROLE BOARD, *et al.*,

        **Defendants.**

## THIRD REPORT AND RECOMMENDATION

Plaintiff, an Ohio prisoner proceeding here without the assistance of counsel, has filed a Motion for Leave to File Second Amended Complaint and tendered a proposed Second Amended Complaint.  (ECF Nos. 30, 30-2.)  The Undersigned **GRANTS** Plaintiff's Motion. After conducting a screen of the tendered Second Amended  Complaint under 28 U.S.C. § 1915(e) and § 1915(A), the Undersigned **RECOMMENDS** that the Court **PERMIT** Plaintiff's narrow procedural due process claim arising from his November 2019 parole hearing to proceed to further development at this time against Defendants Annette Chambers-Smith, in her official capacity as Director of the Ohio Department of Rehabilitation and Correction ("ODRC") and Lisa Hoying, in her official capacity as Director of the Ohio Adult Parole Authority ("OAPA"). Finally, the Undersigned **RECOMMENDS** that the remaining claims be **DISMISSED.**

### I.      Background

Plaintiff initiated this case, seeking declaratory and injunctive relief for alleged violations of his constitutional rights under 42 U.S.C. § 1983 by filing a motion for leave to proceed *in forma pauperis* on December 29, 2022. (ECF No. 1.)  The initial Complaint named as

Defendants the Ohio Parole Board ("OPB") and the Ohio Department of Rehabilitation and Corrections ("ODRC") and alleged violations of Plaintiff's civil rights in connection with a parole suitability hearing held on November 27, 2019. The Court's screen of Plaintiff's initial Complaint resulted in a Report and Recommendation of dismissal in its entirety. (*Report and Recommendation* dated June 13, 2023, ECF No. 5.)

In response, Plaintiff moved for leave to file an amended complaint which named as Defendants Annette Chambers-Smith (Director), ODRC, Alicia Handwick (Chairperson), OAPA, OPB and six John and Jane Doe Board Members and again alleged violations of Plaintiff's civil rights with respect to the November 2019 parole hearing. (ECF No. 9.)  The Court granted that motion and conducted a second screening directed to the Amended Complaint. (ECF Nos. 10, 12.)  Based upon that second screening, the Court recommended that all but one of the claims in the Amended Complaint be dismissed under 28 U.S.C. §§ 1915A(b) and 1915(e)(2) as frivolous or for failure to state a claim on which relief may be granted. (*Second Report and Recommendation* dated October 11, 2023, ECF No. 12.)  The Court further recommended that Plaintiff be permitted to proceed on his only potentially viable due process claim, a claim that he was denied parole on the basis of false information.  (*Id*. at 25.)  As the Court characterized it, "[i]f the District Judge agrees, what will remain for further proceedings will be a single claim under 42 U.S.C. § 1983 against the eight individual defendants in their official capacities, for an alleged violation of procedural due process under the Fourteenth Amendment." (*Id.* at 25-26.)  The Court also advised Plaintiff of his obligation to seek leave to amend in the event he discovered the names of the John and Jane Doe Defendants. (*Id*. at 24.) The Second Report and Recommendation was adopted by Order dated November 16, 2023. (ECF No. 13.)

For various reasons largely attributable to Plaintiff, service was not undertaken.  On September 16, 2024, Plaintiff filed a request for a 90-day stay, explaining that he was set to receive a "halftime review" for parole in November 2024, which may lead to an outcome relevant to this proceeding. (ECF No. 21.) On September 19, 2024, the Court stayed this action for 90 days. (ECF No. 22.)  After the expiration of the stay and more delay, again largely attributable to Plaintiff, Plaintiff filed his current Motion for Leave to File Second Amended Complaint on April 29, 2025.  (ECF No. 30.)

## II.    Legal Standard

Generally, pursuant to Rule 15(a), the Court should freely grant a party leave to amend his or her pleadings when justice so requires. Fed. R. Civ. P. 15(a). Rule 15(a) sets forth "a liberal policy of permitting amendments to ensure the determination of claims on their merits." *Oleson v. United States*, 27 F. A'ppx 566, 569 (6th Cir. 2001) (internal quotations omitted). As the United States Court of Appeals for the Sixth Circuit has noted, "[f]actors that may affect [a Rule 15(a)] determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008).  A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

As the Court previously has explained in this case, the Prison Litigation Reform Act authorizes *sua sponte* review of any complaint in which a prisoner seeks to proceed *in forma pauperis* to determine whether the complaint, or any portion of it, should be dismissed because it

is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b). This is not an all-or-nothing proposition; if only a part of the Second Amended Complaint is frivolous or fails to state a claim, only that part must be dismissed. *Id.* Likewise, if only a part of the Second Amended Complaint states a plausible claim, only that part may proceed. Thus, because Plaintiff is a prisoner proceeding *pro se*, the Court must re-screen his tendered Second Amended Complaint under the PLRA regardless of whether the amendment is considered under Rule 15. *Nutt v. Seta*, No. 1:19-CV-460, 2020 WL 581837, at *1 (S.D. Ohio Feb. 6, 2020), *report and recommendation adopted*, No. 1:19-CV-460, 2020 WL 1042476 (S.D. Ohio Mar. 4, 2020).

An additional note. As discussed in more detail below, through his amended pleading, Plaintiff seeks, at least in part, to include allegations arising from his New Release Consideration Review, which occurred on September 3, 2024, a date after he filed his currently operative Amended Complaint. To this extent, it is more accurate to consider his Motion as one to supplement. *See Hanley v. City of Hamilton, Ohio*, No. 1:23-cv-342, 2024 WL 4817446, at *3 (S.D. Ohio Nov. 18, 2024) (citing *Weisbord v. Michigan State University*, 495 F. Supp. 1347, 1350-51 (W.D. Mich. 1980) ("The purpose of a supplemental pleading is to set forth new facts that have occurred since the filing of the original pleading and that affect the controversy and the relief sought. Its function is to bring the action 'up to date.'"). Nevertheless, "a court applies the same considerations when evaluating a Rule 15(d) motion to supplement as when evaluating a Rule 15(a) motion to amend." *Id.* (citing *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002) (holding that same standard of review applied to Rule 15(d) motion to supplement as to Rule 15(a) motion to amend)).

Consistent with the background information above, Plaintiff recognizes that the Court narrowed the scope of his previously screened Amended Complaint to one issue.  Nevertheless, he explains that, after the stay to allow new parole consideration, in his proposed Second Amended Complaint he seeks to address new errors from that proceeding along with his previously remaining claim.  According to Plaintiff, consideration must be given to the ruling in *Brust v. Ohio Parole Board*, 10th Dist. Franklin No. 2AP-581, 2023-Ohio-4104 (Nov. 14, 2024), and the refusal to share necessary information he requested in both parole considerations.  In Plaintiff's view, the issue that survived the screening of his Amended Complaint is whether the Defendants used erroneous information in determining his parole eligibility in violation of his due process rights.

Further, Plaintiff states that his proposed Second Amended Complaint changes the named Defendant chairperson of the Ohio Adult Parole Authority to reflect the "new department head." Consistent with this representation, his tendered pleading now names as Defendant Lisa Hoying in her official capacity on behalf of the OAPA/OPB.  (ECF No. 30-2 at ¶¶ 6, 11.)  Further, Plaintiff confirms that he has opted not to proceed against any John or Jane Doe parole board members.

For good cause shown, Plaintiff's Motion is **GRANTED.**   The Undersigned must now screen Plaintiff's Second Amended Complaint as required by the PLRA.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(a).

### III.    Discussion

Initially, the Undersigned incorporates by reference the additional background, the nature of Plaintiff's claims, and the governing law as set forth in the *Second Report and Recommendation* and adopted by the Court in full by Order dated November 16, 2023.  (ECF Nos. 12, 13.)  This

incorporation specifically includes the acknowledgment that Plaintiff's claims arising in

November 2019 may be barred by the statute of limitations and not saved by the Ohio Savings

Statute, but that this is an issue which will be resolved later. (*Second Report and

Recommendation,* ECF No. 12 at 8-13.) Accordingly, for purposes of brevity, the Undersigned

will limit the discussion here to only those issues necessary for the consideration of Plaintiff's

amendments, except as necessary for clarification.

With respect to the matter of clarification, the Court previously held that the ODRC,

OAPA, and the OPB are not proper defendants in a § 1983 case and are also immune from suit.

(ECF Nos. 12, 13.) Plaintiff's intention with respect to these organizational defendants is not

clear from his proposed Second Amended Complaint. Although certain language suggests

Plaintiff's understanding that these entities are not proper defendants here (*see, e.g.,* ECF No. 30-

2 at ⁋ 11; *see also* Summons and USM forms, ECF Nos. 30-3, 30-4) other language is less

precise (*see, e.g., id.* at Caption, ⁋⁋ 5, 6.) Accordingly, to be clear, to the extent the Second

Amended Complaint could be read as attempting to assert any claims against these

organizational defendants, any such claims should be dismissed based on the Court's previous

reasoning.

Further, Plaintiff has divided certain allegations in his proposed Second Amended Complaint

into two categories. The first category relates to his "First Parole Hearing" held on November

27, 2019. (ECF No. 30-2 at 10-13.) The second category, discussed more fully below, relates to

his "New Release Consideration Review," otherwise referred to as his "halftime review" held on

September 3, 2024. (*Id.* at 13-14.) As noted, the Court has twice considered, at some length,

Plaintiff's claims relating to his "First Parole Hearing." (ECF Nos. 5, 12, 13.) In doing so, the

Court has explained to Plaintiff that the type of claim concerning a parole hearing that may be

6

raised in a § 1983 action is limited.  (*Report and Recommendation*, ECF No. 5 at 9-11 citing

*Jackson v. Hudson*, No. 2:18-cv-1319, 2019 WL 3521745, at *3-4 (S.D. Ohio Aug. 2, 2019);

*Second Report and Recommendation*, ECF No. 12 at 13.)   Further, the Court has advised

Plaintiff that the overarching assertion in his Amended Complaint, that he was denied

"meaningful consideration for parole," a claim also looming large over his proposed Second

Amended Complaint, reads as a substantive due process claim.  (*Second Report and*

*Recommendation*, ECF No. 12 at 13.)  But, as the Court has informed Plaintiff, no substantive

due process claim exists in the circumstances of this case because Plaintiff does not have a

liberty interest in parole as a matter of law.  (*Id.*  citing *See Bell v. Anderson*, 301 F. App'x 459,

462 (6th Cir. 2008); *Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth*., 492 F. App'x

567, 569-70 (6th Cir. 2012)).

Consistent with the cited authority, the Court has dismissed the following claims from

Plaintiff's prior pleadings:

> All claims arising under the Fifth Amendment (remaining silent); the Sixth
> Amendment (counsel); the Eighth Amendment (equal protection and substantive
> due process, as well as procedural due process, with the exception of the narrow
> issue identified in the R&R [whether Plaintiff was denied parole based on false
> information in violation of procedural due process under the Fourteenth
> Amendment]).

(*Order,* ECF No. 13 at 2.)  Despite the Court's previous rulings, Plaintiff once again appears to

allege some of the same constitutional violations.  (*See, e.g.,* ECF No. 30-2 at ¶ 49 ("Sixth &

Fourteenth Amendments"); ¶ 50 ("Fifth Amendment").)  Accordingly, to the extent that the

proposed Second Amended Complaint can be read as an attempt to reassert any claims relating

to Plaintiff's first parole hearing in November 2019, which previously were dismissed, they fail

for the same reasons already addressed by the Court.  To reiterate, the only potentially viable due

process claim arising from Plaintiff's 2019 parole hearing that the Court previously has allowed

to proceed past the screening stage is a claim that Plaintiff was denied parole based on false information in violation of procedural due process under the Fourteenth Amendment. (*Order*, ECF No. 13 at 2.)

This brings the Court to the crux of Plaintiff's proposed substantive amendments. As Plaintiff explains

> Because of this court's prior rulings in our case Plaintiff focusses (*sic*) on three key issues: 1.) Information used in violation of *State ex rel. Keith v. Ohio Adult Parole Authority*, 141 Ohio St.3d 375, 380, 2014-Ohio-4270. 2.) Information not provided under *Brust v. Ohio Parole Bd.*, 2023-Ohio-4104. And 3.) failure to make recommendations for programming under ORAS. All of which harms that occurred at the November 2019 hearing and continued at the September 2024 halftime review. Thus, Plaintiff tries to give greater clarity and narrows arguments of the unconstitutional refusals of Defendants Chambers-Smith and Hoying's failure to administer an effective system of parole or to grant Plaintiff meaningful opportunity for parole.

(ECF No. 30-2 at ¶ 72.) With respect to his September 2024 "halftime review," Plaintiff contends that the parole board denied him a new parole hearing for alleged "continued bad conduct." According to Plaintiff, he made document requests for the same or similar information he had requested in preparation for his 2019 parole hearing and for copies of evidence he believed could be related to his undefined "continued bad conduct" but Defendants failed to release it, preventing him from preparing for any parole consideration. (ECF No. 30-2 at ¶¶ 66-69.)

Taking Plaintiff's last point in Paragraph 72 first, that Defendants failed to comply with the Ohio Risk Assessment System ("ORAS"), to the extent Plaintiff alleges that Ohio laws were violated, he does not state a claim under § 1983. As the Court previously has explained to Plaintiff, Section 1983 does not provide a remedy for violations of state laws or regulations. *Report and Recommendation*, ECF No. 5 at 17-18. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2

8

(6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law.");
*Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of
some federal constitutional or statutory right has occurred, § 1983 provides no redress ...").

Thus, "Defendants' alleged failure to comply with [a state] administrative rule or policy
does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123,
2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases); *Burgess*, 2021 WL
5816830, at *4 ("to the extent that Williams identifies state policies as conferring a right for a §
1983 claim, the Court dismisses that claim").

Any allegation that a defendant failed to comply with state law such as Ohio Revised
Code § 2967.03 and Ohio Admin. Code § 5120:1-1-07 does not state a cognizable claim under §
1983 and should be dismissed.  *See Brown v. Mahlman*, No. 1:22-cv-239, 2022 WL 17817615, at
*3 (S.D. Ohio Dec. 19, 2022) (dismissing alleged violations of ODRC policy because they "fall
outside the scope of § 1983"); *Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994) ("The
parole authorities of the State of Michigan may have been required to follow their own
procedural statutes and regulations on parole ... as a matter of *state* law, but there is not now any
viable legal theory by which Michigan state authorities are required to follow such procedural
rules as a matter of *federal* due process.") (emphasis in original); *Stone v. Ohio Parole Bd.*, No.
2:21-cv-884, 2023 WL 155903, at *7 (S.D. Ohio Jan. 11, 2023), *report and recommendation
adopted*, 2023 WL 2018897 (S.D. Ohio Feb. 15, 2023) (noting that even if defendants failed to
follow ODRC policy with respect to plaintiff's parole hearing, "that failure is not in and of itself
a constitutional violation.") (cleaned up).

Turning to Plaintiff's reliance on *Keith*, as discussed, the Court has already allowed
Plaintiff to proceed on a narrow Fourteenth Amendment claim as it relates to his 2019 parole

9

hearing.  Again, that conclusion was based on "Plaintiff's allegation 'that the Board relied on, or

may have relied on, secret victim-related statements that may have been incorrect.'" (*Second

Report and Recommendation*, ECF No. 12 at 15 citing *Report and Recommendation*, ECF No. 5

at 11-13.)  As it relates to his September 2024 "halftime review," however, Plaintiff's claim

appears to be more expansive.  Specifically, Plaintiff alleges the following:

> 67.  On March 5 and June 20, 2024, Plaintiff made document requests for the same
> or similar information as the one he made in preparation for his 2019 parole hearing.
> Requesting copies of his Institutional Summary Report (ISR), Staff Special
> Notices, Victims Statements, Department Offender Tracking System Portal
> (DOTS), Reentry Accountability Plan (RAP), etc. from Lisa Hoying and Jennifer
> Clements.  Said requests were denied and information not provided because of
> Defendant Chambers-Smith and Hoying's unconstitutional failure to direct release
> of this information to candidates.

> 68.  Plaintiff also made requests for copies of evidence he believed could be related
> to his undefined "continued bad conduct" which should appear in said Staff Special
> Notices, ISR's, DOTS, RAP, etc.  Also requesting access to specific evidence from
> DWA Cheers, Sgt. Costin, and Lt. Lanzer at his prison.  Plaintiff believes a single
> incident of an attempt to prevent an altercation or escalation is being construed to
> harm him at the parole board.  Such evidence must be subject to disclosure and
> challenge under *Keith* and *Brust*, or such incidences should not be useable to deny
> his parole.

> 69.  Upon Defendant Chambers-Smith and Hoying's unconstitutional failure to
> direct disclosure of such information Plaintiff could not properly prepare for any
> parole consideration.  Without disclosure of what incidences, reports, or statements
> are being used to [] prevent parole; errors in the record cannot be challenged,
> corrected, nor contextualized.

(ECF No. 30-2 at 13-14.)

To the extent Plaintiff alleges that Defendants were required to provide him the records

he requested in connection with his 2024 "halftime review," any such claim fails.  As this Court

previously has discussed, *Keith* has not been extended to require parole officials to provide

copies of parole files to prisoners.  *Solly v. Hoying*, No. 2:24-CV-1249, 2024 WL 3043327, at

*11 (S.D. Ohio June 18, 2024).  In fact, the Ohio Supreme Court has said the opposite:

> In *Keith I*, this court held that the OAPA was not required to conduct an extensive investigation in every prisoner's case to ensure the accuracy of its files. 141 Ohio St.3d 375, 2014-Ohio-4270, 24 N.E.3d 1132, at ¶ 27. <u>Nor does *Keith I* or *Keith II* require the parole board to allow inmates to review their parole records and formally respond prior to a hearing.</u> Under current DRC policy, each inmate is permitted to respond to the factual information discussed at the hearing and to submit verbally or in writing any additional information that is pertinent. Ohio Department of Rehabilitation and Correction, *Policy No. 105-PBD-03*, at 9, https://drc.ohio.gov/Portals/0/Policies/DRC% 20Policies/105-PBD-03% 20(July% 202017).pdf?ver=2017-07-31-141430-577 (accessed Jan. 22, 2019). [The inmate] was permitted to raise his claims, and he did have an error corrected. He has failed to prove a clear legal right to review his parole record prior to a scheduled parole hearing.

*Id.* (quoting *State ex rel. Brust v. Chambers-Smith*, 156 Ohio St. 3d 331, 336, 2019-Ohio-857, 126 N.E.3d 1099 (emphasis added); s*ee also Beckman v. Ohio Parole Bd.*, Franklin C.C.P. No. 21CV7757, 2022 WL 20611240, at *9 (Apr. 29, 2022) (citing *Brust v. Chambers-Smith*, 2019-Ohio-857, ¶ 21) (finding no statutory support or support in *Keith* that would entitle prisoner to records).

Plaintiff also overreads the 2023 *Brust* decision to the extent he believes it holds otherwise.  That 2023 decision, while noting that the earlier *Brust* case had "determined [that] inmates do not have a due process right to review their parole record prior to a hearing" did not disturb that holding and found the cases distinguishable.  *Brust v. Ohio Parole Bd.,* 10th Dist. Franklin No. 22AP-581, 2023-Ohio-4104, ¶¶ 16, 49 (Nov. 23, 2023).  Indeed, the Tenth District Court of Appeals has explained its 2023 *Brust* holding in this way:

> In *Brust*, this court followed *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270, 24 N.E.3d 1132 ("*Keith I*"), and reiterated that **"'[w]here there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the [OAPA] has an obligation to investigate and correct any significant errors in the record of the prisoner.'"** *Brust* at ¶ 42, quoting *Keith I* at ¶ 28. The remedy, we noted in *Brust*, for substantive inaccuracies at a parole hearing, is a writ of mandamus to correct such errors if the inmate shows: **"(1) a credible allegation, supported by evidence, of a substantive inaccuracy or error in the materials relied on at a parole hearing, and (2) that the inaccuracy or error may have**

11

> **prevented the inmate from receiving meaningful consideration for parole, i.e., the allegedly erroneous information was material to the inmate's parole request.**" *Brust* at ¶ 43, citing *State ex rel. Keith v. Dept. of Rehab. & Corr.*, 153 Ohio St.3d 568, 2018-Ohio-3128, ¶ 16, 109 N.E.3d 1171.

*State ex rel. Ellis v. Ohio Adult Parole Auth.,* 10th Dist. Franklin No. 23AP-775, 2024-Ohio-2345, ¶ 5 (June 18, 2024), *aff'd sub nom. State ex rel. Ellis v. Adult Parole Auth.,* 2025-Ohio-1625, ¶ 5, 178 Ohio St. 3d 484; *see also State ex rel. Norris v. Ohio Adult Parole Auth.,* 2025-Ohio-583, 10th Dist. Franklin No. 24AP-7, ¶ 6 (Feb. 20, 2025).

Plaintiff's overreading of the 2023 *Brust* decision does not seem to end there.  Indeed, Plaintiff appears to believe its holding expands the narrow procedural due process claim the Sixth Circuit has recognized following *Keith.  See, e.g., Dodson v. Mohr*, No. 21-3778, 222 WL 3954932, at *3 (6th Cir. 2022).   And, Plaintiff seems to believe that his reading of *Brust* applies to both his 2019 parole hearing and his "halftime review."  As the above excerpt confirms, however, the 2023 *Brust* decision does no such thing.  As the State appellate court itself explains, it was applying *Keith I* in reaching its conclusion in the 2023 *Brust* decision.  And, in so doing, it identified an appropriate *remedy* for such a claim under the circumstances of the record before it.  Further undermining any idea that Plaintiff may assert a new claim relying on the *Brust* 2023 decision is that it is not a decision from the Ohio Supreme Court, and, to date, has not been recognized by the Sixth Circuit as creating a new procedural due process claim.  Thus, to the extent Plaintiff cites "[i]nformation not provided under *Brust*" as, at least in part, his basis for seeking to amend, this effort is to no avail.  (ECF No. 30-2 at ⌐ 72.)  And, to be clear, this is so with respect to both his September 2024 "halftime review" and any suggestion Plaintiff makes that the *Brust* 2023 decision could create a claim relating back to his November 2019 parole hearing.  (*Id.* "All … harms … occurred at the November 2019 hearing and continued at the September 2024 halftime review.").

Moving on to Plaintiff's other allegations relating more specifically to his "halftime review," it is not clear from Plaintiff's description of this review what due process protections may accompany it.  Nevertheless, construing all allegations in Plaintiff's favor, the Undersigned will assume, without deciding, that the minimal due process protections relevant to his parole hearing also apply to his "halftime review."   Upon review, the Undersigned does not construe Plaintiff's allegation that "a single incident of an attempt to prevent an altercation or escalation is being construed to harm him at the parole board," as an attempt to state an independent procedural due process claim.  Even were Plaintiff intending to raise such a claim, it would fail. As the Undersigned discussed in considering Plaintiff's original Complaint:

> This Court has recognized that even though Ohio prisoners have no liberty interest in parole itself, they do possess a liberty interest in being free from "parole decisions ... made in reliance on information that the Parole Board [knew was] inaccurate or ha[d] reason to know [was] inaccurate." *Kinney v. Mohr*, No. 2:13-CV-1229, 2015 WL 1197812, at *4 (S.D. Ohio Mar. 16, 2015); *see also Solly v. Mausser*, No. 2:15-CV-956, 2018 WL 1070504, at *3 (S.D. Ohio Feb. 27, 2018) (inmates have a right to parole determinations made in reliance on "accurate parole records"); *Jergens*, 492 F. App'x at 571 n.5 ("Neither this decision nor any binding circuit precedent ... forecloses the possibility that, in an appropriate case, a parole board's reliance on unconstitutional factors—or even on false information in the parole file—could constitute a due-process violation.").  A decision made on knowingly false information would constitute a "wholly arbitrary decision-making process" that offends due process. *Jergens*, 492 F. App'x at 571 n.5.
>
> To state a procedural due process claim, then, a potential parolee's complaint must point to "verifiable errors" contained in the parole file that the parole board knowingly relied on to make its determination. *Kinney v. Mohr*, No. 2:13-cv-1229, 2015 WL 1197812, *4 (S.D. Ohio March 16, 2015).  For example, the plaintiff in *Kinney* alleged that his parole records falsely stated he was previously denied parole because he raped and shot a female victim and premeditated killing three other victims by shooting them in the head. *Id.* at *2. He also alleged that after he notified the parole board of these errors, presenting them with an autopsy report and a hearing transcript that contradicted the record's statements, the parole board nonetheless failed to correct them. *Id.* The court found that these allegations were specific enough to state a procedural due process claim. *Id.*; *see also Keith*, 2014-Ohio-4270, ¶ 30 (recognizing a procedural due process claim when the plaintiff pointed to "substantive errors in the record that" the parole authority was aware of but failed to correct and which "may have influence[d] the [parole authority's]

consideration of his parole"). In contrast, *Jergens* concluded that the plaintiff's allegation that the parole board relied on "false information [in his] criminal record and history" was too vague to make out a claim. 492 F. App'x at 571 n.5 (citing *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001)); *see also Solly v. Mausser*, No. 2:15-cv-956, slip op. at 5-6 (S.D. Ohio Nov. 6, 2015) (dismissing a procedural due process claim when the plaintiff "allege[d] that Defendants relied on false information in denying him a meaningful parole hearing" but did "not describe the nature of the false information or how it was used against him").

Plaintiff's Complaint does not allege any specific "verifiable error" that Defendants knowingly used to make their parole determination. Rather, Plaintiff alleges merely that the criminal history contained in his record was "of an erroneous nature" and "failed to highlight the improvements [he] made ... in his rehabilitation process," Compl. 5, ECF No. 3. This "[n]aked assertion[ ]," *Iqbal*, 556 U.S. at 678, is insufficient to state a plausible claim for relief. Indeed, Plaintiff's contention that his record does not adequately account for his improvements demonstrates that his ultimate concern may be not with the veracity of his criminal record at all but rather with Defendants' reliance on it even though—in Plaintiff's view—it does not adequately account for his rehabilitation. But whether Defendants' parole decision was informed by a full picture of Plaintiff's rehabilitation is not a question that falls within the province of procedural due process. All that matters from a procedural due process standpoint is whether the parole authority knowingly relied on false information. Because Plaintiff fails to present any "specific factual allegations" about errors in his record or Defendants' knowing reliance on them, *Harden-Bay v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008), he fails to state a plausible claim under § 1983 for violations of procedural due process.

*Jackson v. Hudson*, No. 2:18-cv-1319, 2019 WL 3521745, at *3-4 (S.D. Ohio Aug. 2, 2019)

(emphasis added). (*Report and Recommendation*, ECF No. 5 at 10-11.)

Here, Plaintiff does not allege that the "single incident of an attempt to prevent an altercation or escalation" did not occur, or that any decision relying on the fact of its occurrence would be based on false information. Instead, he merely speculates that this occurrence may have influenced the results of his "halftime review." This allegation does not present a verifiable error as discussed in *Jackson* and *Kinney*. It also stands in contrast to the allegations the Court already has found to support Plaintiff's only potentially viable procedural claim allowed to proceed past screening under § 1983. With respect to his 2019 parole hearing, Plaintiff alleged that:

> [D]isconnected from the reality of his education, upbringing, and life as a DAS Certified Construction Manager who specialized in Commercial Architectural Identification Projects, and his modest real-estate investments; the Board apparently believed he was instead a home bathroom remodeler and a small time drug dealer. Neither of which has ever been true. The narrative they adopted in the hearing was the same as one available from an unofficial source on the internet. This website was meant to slander Plaintiff and block his parole.

(*Second Report and Recommendation*, ECF No. 12 at 15 citing Complaint, ⁋ 58 and Amended Complaint, ⁋ 61.) [1] Thus, Plaintiff alleged two specific factual errors and explained how such allegedly erroneous information could have played a part in his 2019 parole consideration. Plaintiff alleges nothing with any similar specificity as it relates to his "halftime review." Accordingly, these allegations fail to state a procedural due process claim relating to that review.

In sum, the Undersigned again concludes that all of Plaintiff's claims are frivolous or fail to state a claim upon which relief may be granted and should be dismissed, except, as the Court already concluded, for the allegation that the Ohio Parole Board used false information to deny him parole in connection with his 2019 parole hearing.

## IV. Summary and Conclusion

Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 30) is **GRANTED.**

Having screened Plaintiff's Second Amended Complaint (ECF No. 30-2), the Undersigned **RECOMMENDS**:

    A. To the extent that Plaintiff continues to name ODRC, OAPA, and OPB as defendants, these organizational defendants should be dismissed from the case because they are

---

[1] Plaintiff's proposed Second Amended Complaint contains this identical allegation in connection with his First Parole Hearing. (ECF No. 30-2, ⁋ 58.)

not "persons" against whom a § 1983 claim can succeed and because they are

immune from suit.

B. All but one of the claims in the proposed Second Amended Complaint should be

dismissed as frivolous or for failure to state a claim on which relief may be granted.

The Undersigned **RECOMMENDS** that the Court permit Plaintiff to **PROCEED** at this

time on his claim that he was denied parole based on false information at his November 2019

parole hearing.  If the District Judge agrees, what will remain for further proceedings will be a

single claim under 42 U.S.C. § 1983, against Defendants Annette Chambers-Smith and Lisa

Hoying in their official capacities, for an alleged violation of procedural due process under the

Fourteenth Amendment.

Service will be issued once the District Judge has considered this Third Report and

Recommendation and any objections to it.  The Clerk, however, is **DIRECTED** to send a

courtesy copy of this Third Report and Recommendation to the Ohio Attorney General's Office

(counsel for State of Ohio employees) at 30 East Broad Street, 23rd Floor, Columbus, Ohio

43215.  The Clerk also is **DIRECTED** to file the Second Amended Complaint (ECF No. 30-2)

separately on the docket.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that

party may, within fourteen (14) days, file and serve on all parties objections to the Report and

Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review of by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

DATED:  September  11, 2025

/s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**